UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELIE KHEN, DORON ORBACH and BEN'S
INTERNATIONAL LUXURY
TRANSPORTATION, LLC, HAGAR FINE, GAL
HALEVI, WILLIAM ORGANEK, and DANA
HOLLAR SCHWARTZ, individually and on behalf
of others similarly situated,

                              Plaintiffs,

                    -against-

US COACHWAYS, INC., JOHN DOE NOS. 1-99,
and ABC CORPORATIONS 1-99,

                              Defendants.

Case No. 1:23-cv-10762 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

 Plaintiffs Elie Khen, Doron Orbach, Ben's International Luxury Transportation, LLC

("Ben's"), Hagar Fine, Gal Halevi, William Organek, and Dana Hollar Schwartz (collectively,

"Plaintiffs") bring this suit for violations of Title VI of the Civil Rights Act of 1964 ("Title

VI"), 42 U.S.C. § 2000d, and the Federal Transit Law, 49 U.S.C. § 5332(b); related state law

claims; and claims under 42 U.S.C. § 1983 against US Coachways, Inc. ("Coachways"), John

Doe Nos. 1-99 ("John Doe Defendants"), and ABC Corporations 1-99 ("ABC Corporations")

(collectively, "Defendants"). *See generally* Dkt. 29 ("Amended Complaint" or "AC").

Plaintiffs also seek to certify a class. *See generally id.* Plaintiffs allege that Defendants

denied them contracted-for transportation to Washington, D.C., because of their Jewish

religion and Israeli national origin; that they were denied access to a public accommodation in

the form of Coachways' bus services on the basis of their religion and national origin; that

Coachways breached its contract with the Israeli American Council ("IAC") to provide bus

services to Washington, D.C.; and that Coachways was negligent in hiring, monitoring,

training, supervising, and retaining its employees.  Coachways moves for judgment on the

pleadings under Federal Rule of Civil Procedure ("Rule") 12(c) and seeks to dismiss the

Amended Complaint.  Dkt. 34.  For the reasons stated below, the Court GRANTS

Coachways' motion in part and DENIES it in part.

## BACKGROUND[1]

### I.    Factual Background

Plaintiffs Elie Khen, Doron Orbach, Hagar Fine, Gal Halevi, William Organek, and

Dana Hollar Schwartz (collectively, "Individual Plaintiffs") are members of the Jewish faith.

---

[1] The facts stated herein are taken from the Amended Complaint and are accepted as true for purposes of this motion.  *See, e.g.*, *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020).  The parties dispute whether the Court may consider certain documents attached to an affirmation, including a declaration, submitted in the context of the present motion.  *See* Dkt. 35 ("Br.") at 5; Dkt. 43 ("Opp.") at 9-11; Dkt. 46 ("Reply") at 2-3; Dkt. 35-1; Dkt. 35-2.

The Court will consider the Coachways/Ben's Agreement on this motion as it is integral to the Amended Complaint.  Dkt. 35-4 (the "Coachways/Ben's Agreement").  Documents that are not appended to a complaint may be integral to the complaint where the complaint "rel[ies] on the document itself for the claims in the suit" as, for example, when "a claim is 'directly premised' on the agreement and it is quoted from at length," or when the complaint "referenced [the agreement] numerous times" and "claims against certain defendants" turn on the agreement.  *Spencer-Smith v. Ehrlich*, 347 F.R.D. 606, 630-31 (S.D.N.Y. 2024) (citation omitted).  Here, Plaintiffs assert that Coachways contracted with the IAC via Plaintiff Ben's to provide charter bus service for Plaintiffs, and thereafter breached that contract.  *See* AC ¶¶ 4, 85-90.  Therefore, the Coachways/Ben's Agreement is integral to the Amended Complaint and the Court may properly consider it when deciding the motion for judgment on the pleadings.

As for the other documents attached to the affirmation in support of Coachways' Rule 12(c) motion, the Court will only take judicial notice of the New York State Department of Corporations' Entity Information for Coachways, Dkt. 35-3.  The Court may take judicial notice of this document as a "public document . . . not subject to reasonable dispute."  *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) (quoting *Richardson v. N.Y.C. Bd. of Educ.*, 711 F. App'x 11, 14 (2d Cir. 2017) (summary order)).  The other documents — a declaration, purported communications between Coachways and its vendors, and various lists related to the contracted-for transportation — may not be judicially noticed as public documents or matters of public record.  *See id.*  The Court will not consider them in resolving the motion for judgment on the pleadings, nor will it convert this motion to one for summary judgment as there has been no discovery in this case.

AC ¶¶ 11-12, 14-17.  Khen, Orbach, and Fine are Israeli nationals.  AC ¶¶ 11-12, 14.  Plaintiff Ben's is engaged in the business of arranging charter bus service and other forms of transportation.  AC ¶ 13.

The Individual Plaintiffs booked passage to Washington, D.C., on November 14, 2023 with Coachways.  AC ¶ 4; *see id.* ¶ 1.  Plaintiffs arranged to travel to Washington, D.C., to attend the March for Israel Rally on November 14, 2023, planned in support of Israel in relation to the conflict in the Gaza Strip, the freeing of hostages, and anti-Jewish discrimination.  AC ¶ 1.  The Coachways buses were organized by the IAC and were contracted for, arranged, and brokered by Ben's.  AC ¶ 4.  Coachways agreed to provide five buses to transport the Individual Plaintiffs (and approximately eighty buses in total for the putative class) to the rally from pickup locations in New York City, Westchester, Connecticut, and elsewhere.  AC ¶¶ 4-5, 24.  On November 14, 2023, Ben's was informed by an email from Coachways that some bus pickups had been cancelled and the passengers, including the Individual Plaintiffs, were stranded.  *See* AC ¶¶ 4-5, 24.  In all, approximately twenty-five percent of the contracted-for buses were canceled or otherwise failed to make it to the rally. AC ¶ 24.

Plaintiffs allege that these cancellations were due to the refusal of Coachways bus drivers or other employees, agents, servants, or contractors in Coachways' employ to transport the Individual Plaintiffs and others similarly situated to the rally.  AC ¶ 3.  Plaintiffs allege that the drivers communicated with one another to coordinate their efforts by text messages and other means, and that the drivers' actions were part of a larger effort among drivers expected to transport passengers waiting at locations such as Dulles International Airport, Florida, Westchester, and Connecticut.  AC ¶¶ 3, 6.

## II.    Procedural History

Plaintiffs Elie Khen, Doron Orbach, and Ben's filed this suit on December 12, 2023, alleging claims against Coachways and John Doe Drivers 1-20 under Title VI, Section 1983, the Federal Transit Law, 49 U.S.C. § 5332(b), and state antidiscrimination statutes, as well as asserting claims for breach of contract and negligence against Coachways.  *See generally* Dkt. 2.  Coachways filed its Answer on March 14, 2024.  Dkt. 16.  On April 19, 2024, Plaintiffs Elie Khen, Doron Orbach, and Ben's moved to amend the Complaint.  Dkt. 23.  The Court granted leave to amend, Dkt. 25, and the Amended Complaint was filed on April 25, 2024, principally adding plaintiffs, additional John Doe drivers, the ABC Corporations, and allegations about the number of buses that were cancelled, *see generally* AC; Dkt. 23-5.  The John Doe Defendants and ABC Corporations have never been identified or served.

Coachways moved for judgment on the pleadings on May 13, 2024, seeking to dismiss the Amended Complaint.  Dkt. 34; Dkt. 35 ("Br.").  Coachways filed an affirmation, a declaration, and numerous exhibits in support of its motion.  *See* Dkts. 35-1 to -11.  The parties completed briefing by July 10, 2024.  Dkt. 43 ("Opp."); Dkt. 46 ("Reply").

### LEGAL STANDARD

Under Rule 12(c), after the pleadings have closed, "but early enough not to delay trial," a party may move for judgment on the pleadings.  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting Fed. R. Civ. P. 12(c)).  "Pleadings include both the complaint and the answer to the complaint."  *Id.* (alteration adopted) (internal quotation marks and citation omitted).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that [for granting] a Rule 12(b)(6) motion for failure to state a claim."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (alteration in original) (quoting *Patel v.*

*Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001)).  A court must "accept all 'well-pleaded factual allegations' in the complaint as true," *id.* at 74-75 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)), and "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff," *id.* at 75 (quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (en banc)).

On a Rule 12(c) motion, "courts may consider all documents that qualify as part of the non-movant's 'pleading,' including (1) the complaint *or* answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice."  *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-cv-08842 (JLR), 2023 WL 5971144, at *5 (S.D.N.Y. Sept. 14, 2023) (quoting *Lively*, 6 F.4th at 306).

## DISCUSSION

Coachways moves under Rule 12(c) to dismiss the AC, which alleges three federal law claims and five state law claims.  *See* Dkt. 34; AC.  Plaintiffs have consented to the dismissal of Count III, which alleges violations of the Federal Transit Law, and the dismissal of Count VI, which alleges violations of the Connecticut Public Accommodations Law, Conn. Gen. Stat. § 46a-64.  *See* Opp. at 14 n.9.  Those claims are accordingly dismissed with prejudice against all Defendants.

The Court will next address the remaining claims brought by Plaintiffs.

## I.    Title VI Claim Against Coachways (Count I)

Plaintiffs first allege that they were discriminated against on the basis of their Jewish religion and Israeli national origin, in violation of Title VI, when Coachways cancelled twenty-five percent of the approximately eighty buses it had agreed to provide to transport the

Individual Plaintiffs and the putative class members to Washington, D.C., for the March for Israel Rally, including five buses for the Individual Plaintiffs.  AC ¶¶ 5, 22-24, 50.

## A.  Legal Standard

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d; *accord Bloomberg v. N.Y.C. Dep't of Educ.*, 119 F.4th 209, 210 (2d Cir. 2024).  The Supreme Court has held that "private individuals may sue to enforce § 601 of Title VI," which "prohibits only intentional discrimination."  *Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001); *see also Bloomberg*, 119 F.4th at 214 ("Title VI authorizes an implied private right of action to enforce Section 601's prohibition on intentional discrimination based on race, color, and national origin.").

## B.  Title VI Analysis

Coachways contends that Plaintiffs have failed to allege facts that plausibly show Coachways subjected them to intentional discrimination.  Br. at 6-7.  Specifically, Coachways argues that Plaintiffs fail to allege that it was aware of their religion or national origin, or to allege other facts that support a plausible inference that Coachways intended to discriminate against them.  *Id.* at 7.  The Court agrees.

Plaintiffs have not alleged facts supporting a plausible claim that they were subject to intentional discrimination by Coachways.  To survive a motion to dismiss, Plaintiffs "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of . . . discriminatory intent" based on race, color, or national origin.  *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 532 (S.D.N.Y. 2013) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994)); *see*

*T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 354 (S.D.N.Y. 2014) ("[C]ourts have regularly found that anti-Semitic harassment and discrimination amount to racial discrimination."); *Shore v. Mirabilio*, No. 16-cv-02078, 2019 WL 13293059, at *7 (D. Conn. Mar. 8, 2019) (similar and collecting cases). Plaintiffs allege that they contracted with Coachways to be taken to Washington, D.C., and that Coachways agreed to transport them to the rally, AC ¶¶ 4, 22; that Coachways failed to provide the contacted-for transportation services because of the efforts of its employees, AC ¶ 23; and that Coachways cancelled 25 percent of the contracted-for buses, including Plaintiffs' buses, at the last minute and told Ben's that the buses were cancelled due to a "driver issue," AC ¶¶ 5, 24. Plaintiffs allege that the actions were "clearly motivated by discriminatory animus . . . based upon [Plaintiffs'] national origin, and/or religious affiliation." AC ¶ 25.

Plaintiffs have not alleged facts that support a claim of discriminatory intent because, as Coachways points out, Plaintiffs do not allege that Coachways was aware that Plaintiffs were Jewish or Israeli. *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 82 (2d Cir. 2005) ("[D]iscriminatory intent cannot be inferred . . . from circumstances unknown to the defendant."). Even if the AC was construed as alleging that Coachways knew that Plaintiffs were contracting for buses to attend a pro-Israel rally, AC ¶¶ 4, 22, which is not clear from the AC, it is not the case that only people of Israeli national origin or the Jewish faith would attend a rally in support of Israel. *Cf. Bibliotechnical Athenaeum v. Am. Univ. of Beiruit*, 527 F. Supp. 3d 625, 636 (S.D.N.Y. 2021) ("To embrace the notion that only a corporation whose identity is based on Israeli national origin can be a supporter in the fight against anti-Israeli discrimination is to embrace the very national origin stereotyping that the federal anti-discrimination laws were intended to prevent."), *aff'd*, No. 21-1642, 2022 WL 710896 (2d Cir. Mar. 10, 2022) (summary order).

Plaintiffs' allegations that Coachways failed to provide transportation services because of the discriminatory efforts of its employees cannot serve as a basis for liability against Coachways under Title VI, as "[l]iability under Title VI . . . cannot be imputed to institutions based on the actions of their employees." *Goonewardena v. New York*, 475 F. Supp. 2d 310, 328 (S.D.N.Y. 2007); *see also Moore v. Bitca*, No. 19-cv-00035, 2020 WL 5821378, at *22 (D. Vt. Sept. 30, 2020) (same); *Bary v. Delta Airlines, Inc.*, No. 02-cv-05202 (DGT), 2009 WL 3260499, at *7 n.7 (E.D.N.Y. Oct. 9, 2009), *aff'd*, 553 F. App'x 51 (2d Cir. 2014) (summary order). While federal courts permit deliberate indifference Title VI claims against funding recipients for the acts of third parties, including their employees, in cases such as this one "that do not involve official policy of the recipient entity," *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998), such claims require, among other things, allegations of actual knowledge and deliberate indifference to the discrimination. *See Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15-cv-07065 (RA), 2019 WL 3821229, at *14 (S.D.N.Y. Aug. 14, 2019) (explaining that Title VI deliberate indifference claims require "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [defendant's] behalf has actual knowledge of discrimination in the [defendant's] programs and fails adequately to respond" (alterations in original) (quoting *Gebser*, 524 U.S. at 290)). "Constructive knowledge (*i.e.*, allegations that the [institution] should have known of the [discrimination]) is not enough." *Roskin-Frazee v. Columbia Univ.*, 474 F. Supp. 3d 618, 624 (S.D.N.Y. 2019). Here, Plaintiffs have pleaded that Coachways "knew, or should have known, of the likelihood of [discriminatory] actions" by its drivers, AC ¶ 27, but do not plead facts supporting actual knowledge, such as reports of the plans or of past discrimination to Coachways' superiors, *see A.S. v. City Sch. Dist. of Albany*, 585 F. Supp. 3d 246, 274-75 (S.D.N.Y. 2022) (plaintiff adequately alleged actual knowledge by

alleging that she told vice principal about another student's harassment), or even identify an employee of Coachways with "authority to address the alleged discrimination," *Gebser*, 524 U.S. at 290; *see Roskin-Frazee*, 474 F. Supp. 3d at 625 (plaintiff failed to state a deliberate indifference claim where she did not allege that the officer she reported harassment to "had the authority to take corrective action to end the discrimination").  Plaintiffs' only factual allegation as to why Coachways "[a]ccordingly" "knew, or should have known," of the likelihood of discriminatory actions by the drivers is a statement issued by the Department of Transportation ("DOT") on September 28, 2023, supposedly (but not actually) annexed to the Amended Complaint, that demonstrates that "the federal government has recognized the existence of religious discrimination in transportation."  AC ¶¶ 26, 27.  Even if this Court were to consider this statement, the statement issued by the DOT on September 28, 2023 was an agreement between the DOT and United Airlines regarding the need to improve air travel for passengers using wheelchairs.  *See What's New*, U.S. Dep't of Transp., https://www.transportation.gov/airconsumer/latest-news (last visited Jan. 11, 2025).  This DOT statement does not support a plausible inference of actual knowledge by Coachways that its bus drivers were likely to discriminate against passengers on the basis of their religion or national origin.  Plaintiffs have accordingly not stated a claim against Coachways under Title VI premised on deliberate indifference to the acts of its employees.  *See Harrell*, 2019 WL 3821229, at *14 (dismissing Title VI claim where plaintiff failed to allege facts supporting actual knowledge).

Plaintiffs argue that they have sufficiently set forth facts supporting an inference of intentional discrimination based on "(1) the statistically improbable amount of US Coachways buses that were canceled, (2) the widespread media reports explaining the racial motivations behind the cancelations, (3) the vague and ambiguous purported reason for the cancelations,

(4) the failure to provide any type of substitute buses or alternative forms of transportation, and (5) the inability to provide any type of advance notice whatsoever regarding the cancelations."  Opp. at 12.  The Court disagrees.

As an initial matter, the Court does not consider the link to a news article cited in Plaintiffs' opposition papers, Opp. at 3 n.7, since that article is outside of the pleadings and Plaintiffs have not proffered a basis for taking judicial notice of the report, nor asked the Court to do so.  Even if the Court were to consider the news article, the article cited did not concern Plaintiffs' bus cancellation or cancellations by Coachways elsewhere, but instead discussed cancellations in Detroit by an unidentified bus company or companies.  Therefore, the article does not support more than speculation about Coachways' intent vis-à-vis Plaintiffs.

Next, Plaintiffs' allegations that Coachways cancelled 25 percent of the contracted-for buses — a "shockingly-high amount" — and told Ben's that the cancellations were due to a "driver issue," AC ¶¶ 5, 24, do not support an inference of discriminatory intent.  The allegation that 25 percent of buses were "canceled" or "otherwise failed to make it" to the March for Israel Rally on its own does not support a nonspeculative inference that the buses were cancelled because of discrimination based on Plaintiffs' Jewish faith or Israeli national origin.  Plaintiffs provide no context for the percentage of cancelled buses that would indicate that cancellations were abnormally high or otherwise indicative of intentional discrimination. *Cf. I.S. ex rel. Disla v. Binghamton City Sch. Dist.*, 486 F. Supp. 3d 575, 606 (N.D.N.Y. 2020) (statistics can create a plausible inference of discriminatory intent for Equal Protection Clause claim where "statistical disparities [are] sufficiently substantial," for example, "greater than two or three standard deviations" (citations omitted)); *id.* (rejecting Equal Protection claim based on statistical evidence where plaintiffs did not provide statistics highlighting disparate

treatment); *D.H. v. City of New York*, 309 F. Supp. 3d 52, 75 (S.D.N.Y. 2018) (rejecting intentional discrimination claim where plaintiffs' proffered statistics did not compare percentages to any baseline).[2]

Plaintiffs' allegations that the reasons for cancellations were "vague," that the cancellations were last minute, and that Coachways did not provide replacement buses also do not support a plausible claim of intentional discrimination. In *Jackson v. Wells Fargo Home Mortgage*, for example, the Second Circuit affirmed the district court's dismissal of a Title VI claim where the sole allegations of racial discrimination were that the plaintiff was African American, that she "qualified for a mortgage refinancing," that her "applications were denied," and that "all of the decisionmakers . . . were white," reasoning that the "allegations [were] simply not enough to support [plaintiff]'s conclusory and speculative assertion that she was targeted on the basis of her race." 811 F. App'x 27, 30 (2d Cir. 2020) (summary order). Similarly, Plaintiffs' allegations that Coachways' communications regarding the cancellation of buses and failure to provide replacement buses are not enough to support a plausible inference that Plaintiffs were targeted on the basis of their Jewish faith or Israeli national origin, particularly since Plaintiffs do not even allege that Coachways knew that Plaintiffs were Jewish or Israeli, and thus fail to allege a link between the actions taken and any discriminatory motive.

Finally, Plaintiffs' allegation that the actions were "clearly motivated by discriminatory animus . . . based upon [Plaintiffs'] national origin, and/or religious

---

[2] In their opposition papers, Plaintiffs cite to a chart reporting the percentage of flights cancelled each year, *see* Opp. at 3 n.6. Putting aside the question of whether the Court may take judicial notice of this document, which Plaintiffs do not ask the Court to do, the report, which is about air travel, not bus travel, does not support an inference that the number of buses cancelled by Coachways on the date in question was abnormally high, and thus does not support Plaintiffs' claim of intentional discrimination.

affiliation," AC ¶ 25, is a "conclusory allegation[] of discrimination [that is] insufficient to establish liability." *Manolov*, 300 F. Supp. 2d at 532 (citing *Iqbal*, 556 U.S. at 678). As a result, Plaintiffs' allegations do not nudge their claim of intentional discrimination across the line from possible to plausible.

Plaintiffs' arguments that the Title VI claim should not be dismissed before they have a chance to conduct discovery are unpersuasive. *See* Opp. at 12-13. Rule 8 and the pleading standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "mark[ed] a notable and generous departure from the hypertechnical, code-pleading regime of a prior era," but Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Rather, the pleading standard "acts as a 'screening mechanism' in the early stages of the litigation" and requires the complaint — not a plaintiff's speculation as to what discovery might uncover — "to allege sufficient facts to 'raise a reasonable expectation that discovery will reveal evidence' of the defendant's wrongdoing." *Lugo v. City of Troy*, 114 F.4th 80, 89 (2d Cir. 2024) (first quoting *Ríos-Campbell v. U.S. Dep't of Com.*, 927 F.3d 21, 24 (1st Cir. 2019); and then quoting *Twombly*, 550 U.S. at 545). For the reasons articulated above, Plaintiffs have not done so here.

Because Plaintiffs have not alleged facts supporting a plausible inference of intentional discrimination, the Court will dismiss Count I against Coachways.

## II.  New York State and City Human Rights Law Claims Against Coachways (Counts IV and V)

Plaintiffs also allege that they were discriminated against in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin Code § 8-107, on the basis of their Jewish religion and Israeli national origin when Defendants prevented their contracted-for

transportation to Washington, D.C.  AC ¶¶ 63-69, 70-76.  Coachways argues that the

NYSHRL and NYCHRL claims should be dismissed because, like the Title VI claim, the

allegations in the AC do not support a claim that Coachways discriminated against Plaintiffs

on the basis of their religion or national origin in violation of the NYSHRL or NYCHRL.  Br.

at 10-12.  Specifically, Coachways argues that Plaintiffs have not alleged facts that support a

claim that Coachways had any knowledge of Plaintiffs' religion or national origin or that

Plaintiffs were treated differently because of their membership in a protected class.  *Id.* at 12.

The NYSHRL prohibits discrimination in "any place of public accommodation" based

on, among other things, "race, creed, [and] national origin."  N.Y. Exec. Law § 296(2)(a).

The NYCHRL contains a similar prohibition against discrimination in a "public

accommodation" based on, among other things, "race, creed, color, [or] national origin."  *See*

N.Y.C. Admin. Code § 8-107(4)(a).  Discrimination claims under both the NYSHRL and

NYCHRL require allegations of discriminatory intent.  *See Jones v. Beth Israel Hosp.*, No.

17-cv-03445 (GHW), 2018 WL 1779344, at *12 (S.D.N.Y. Apr. 12, 2018) (to state a claim

under the NYSHRL for discrimination in a place of public accommodation, "a plaintiff is

required to allege facts sufficient to give rise to an inference of discrimination"); *Charlier v.

21 Astor Place Condo.*, No. 22-cv-05903 (LTS), 2024 WL 4026253, at *4 n.6 (S.D.N.Y. Sept.

3, 2024) (to state a claim for discrimination under the NYCHRL, a plaintiff must show that

"they have been treated less well than others because of a protected characteristic" (brackets,

omission, and internal quotation marks omitted)).  In 2019, an amendment to the NYSHRL

was enacted providing that the NYSHRL should be construed "liberally for the

accomplishment of the remedial purposes thereof, regardless of whether federal civil rights

laws including those laws with provisions worded comparably to the provisions of [the

NYSHRL] have been so construed."  *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d

51, 68 (S.D.N.Y. 2020) (alteration in original) (quoting N.Y. Exec. Law § 300).  The conduct alleged in this suit occurred after the date of the amendment.  The parties did not brief, and the Court need not resolve, the impact of the 2019 amendment on the standard for religion or national origin discrimination in places of public accommodation, since even under the NYCHRL standard, Plaintiffs fail to state a claim against Coachways.

Plaintiffs' NYSHRL and NYCHRL claims against Coachways are dismissed for the same reasons that their Title VI claim is dismissed: they have not pled facts supporting an inference of discriminatory intent.  The AC does not allege that Coachways knew of Plaintiffs' Jewish faith or Israeli citizenship, does not allege facts, as opposed to speculation, supporting a claim that Coachways treated Plaintiffs differently than others because of their protected characteristics, and thus does not give rise to an inference of discrimination based on Plaintiffs' Jewish faith or Israeli citizenship.  These allegations thus do not satisfy even the "less stringent" standard of the NYCHRL, *Charlier,* 2024 WL 4026253, at *4 n.6 (quoting *Novio v. N.Y. Acad. of Art*, 286 F. Supp. 3d 566, 583 (S.D.N.Y. 2017)), or the NYSHRL.  As a result, the Court dismisses Counts IV and V against Coachways.

## III.    Section 1983 Claim Against Coachways (Count II)

Plaintiffs next bring a claim against Coachways under Section 1983, alleging that Coachways deprived them of their rights under the First Amendment, Fifth Amendment, Fourteenth Amendment, Title VI, and the Federal Transit Law when it allegedly acted to prevent Plaintiffs' contracted-for transportation based on their Jewish faith and Israeli national origin.  AC ¶¶ 55-56.

**A.  Legal Standard**

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, "the plaintiff must allege '(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'"  *Greene v. City of New York*, 725 F. Supp. 3d 400, 417 (S.D.N.Y. 2024) (quoting *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)).

Private parties are not generally liable under Section 1983.  *Pedrow v. Greenburgh Police Dep't*, No. 24-cv-04010 (PMH), 2024 WL 4494292, at *1 (S.D.N.Y. Oct. 15, 2024). The acts of nominally private entities can be attributed to the state if they meet one of the three tests used in this Circuit to identify state actors:

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (alteration and omission in original) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)); *see Mumin v. City of New York*, No. 23-cv-03932 (JLR), 2024 WL 5146085, at *23 (S.D.N.Y. Dec. 17, 2024) (same).

**B.  Section 1983 Analysis**

Coachways argue that Plaintiffs have not pleaded facts showing that it was a state actor under any of the aforementioned tests for state action.  Br. at 8.  The Court agrees.

Plaintiffs allege no facts supporting an inference that any governmental authority exercised coercive power over Coachways' actions.  "Under the state compulsion test, 'a State normally can be held responsible for a private decision only when it has exercised coercive power or provided such significant encouragement, overt or covert, that the choice must in law be deemed to be that of the State.'"  *Doe v. Harrison*, 254 F. Supp. 2d 338, 342 (S.D.N.Y. 2003) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).  Courts determining whether compulsion is present "look at whether the challenged activity was 'compelled or even influenced' by state regulation."  *Lynch v. Southampton Animal Shelter Found. Inc.*, 971 F. Supp. 2d 340, 350 (E.D.N.Y. 2013) (quoting *Colabella v. Am. Inst. of Certified Pub. Accts.*, No. 10-cv-02291 (KAM), 2011 WL 4532132, at *11 (E.D.N.Y. Sept. 28, 2011)).  Plaintiffs have made no allegation that any government entity was involved in the decision to cancel the Coachways buses or that government regulation compelled or influenced Coachways' actions. *See generally* AC.  The AC thus does not contain allegations that support state action based on coercion.

Next, Plaintiffs make no allegations that support joint action with the state.  "The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the [government].'"  *DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 69 (E.D.N.Y. 2019) (quoting *Forbes v City of New York*, No. 05-cv-07331 (NRB), 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008)).  At most, Plaintiffs allege that Coachways is a recipient of Federal Transportation Administration funding and benefits from federal and state funding and subsidies.  AC ¶¶ 28, 60.  But an

entity's "receipt of public funds does not make [its] decisions acts of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982); *see Fabrikant*, 691 F.3d at 207 ("[A] private entity does not become a state actor for purposes of § 1983 merely on the basis of 'the private entity's creation, funding, licensing, or regulation by the government.'" (quoting *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003))); *Abadi v. Am. Airlines, Inc.*, No. 23-cv-04033 (LJL), 2024 WL 1346437, at *20 (S.D.N.Y. Mar. 29, 2024) ("[T]he fact that a private entity contracts with the government or receives governmental funds or other kinds of governmental assistance does not automatically transform the conduct of that entity into state action."). As a consequence, Plaintiffs do not plead facts supporting a joint action theory of state action.

Finally, the AC's allegations do not plausibly plead state action under the public function test. "Under the public function test, state action occurs when a private actor performs a function that is 'traditionally the exclusive prerogative of the State.'" *Harrison*, 254 F. Supp. 2d at 343 (quoting *Blum*, 457 U.S. at 1011). For example, courts have found state action under this test when private parties perform functions such as "medical care for prison inmates, holding local primary elections, animal control, operation of a post office," and "fire protection." *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 265 (2d Cir. 2014) (citations omitted) (collecting cases). No allegations in the AC support a plausible conclusion that Coachways' actions — operating a transportation company that provides coach buses — are a traditional public function. As a result, Plaintiffs have not plead facts that support a public function theory of state action.

In their opposition papers, Plaintiffs do not contend that the AC adequately pleads state action. Instead, they argue that they should be permitted to conduct discovery to uncover the extent of potential government involvement and that it would be "premature" to dismiss

the Section 1983 claim at this stage, since discovery might uncover additional information. Opp. at 13-14.  But as discussed above, Rule 8 requires a plaintiff to plead facts in the complaint that "'raise a reasonable expectation that discovery will reveal evidence' of the defendant's wrongdoing." *Lugo*, 114 F.4th at 89 (quoting *Twombly*, 550 U.S. at 545). Plaintiffs have not done so here.

As a result of Plaintiffs' failure to plead facts supporting the claim that Coachways acted under color of state law, the Court will dismiss Count II.

## IV.   Breach of Contract Claim Against Coachways (Count VII)[3]

Plaintiffs also bring a breach of contract claim against Coachways, alleging that the Individual Plaintiffs were the third-party beneficiaries of a contract between the IAC and Coachways to transport the Individual Plaintiffs and the putative class members to the March for Israel Rally; that they and the IAC performed their obligations under the contract; that Coachways breached by failing to provide transportation and by not refunding an amount of

---

[3] While the parties do not brief choice of law, they both appear to agree that New York law applies to the breach of contract and negligence claims.  *See* Br. at 14-15; Opp. at 16.  "A federal court exercising its supplemental jurisdiction over state law claims applies the choice of law rules of the forum state." *Carroll v. LeBoeuf, Lamb, Green & MacRae, L.L.P.*, 392 F. Supp. 2d 621, 628 (S.D.N.Y. 2005); *accord CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 650 F. Supp. 3d 228, 254 (S.D.N.Y. 2023) (similar).  "[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 486 (S.D.N.Y. 2017) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)).  If "[t]he parties' briefs assume that New York substantive law governs the issues . . . such implied consent is . . . sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).  Because the parties' briefs rely on and indicate their assent to the application of New York law and the Court has not identified a strong countervailing public policy, the Court will apply New York law to the breach of contract and negligent supervision claims.  *See PetEdge*, 234 F. Supp. 3d at 486 (applying New York law where party implicitly consented by citing exclusively to New York law).

$18,950, and; that Plaintiffs experienced damages, including the nonrefunded amount, because of the alleged breach. AC ¶¶ 84-91.

### A. Legal Standard

To state a claim for breach of contract under New York law, a party must allege: (i) the existence of a contract; (ii) performance of the contract by one party; (iii) breach by the defendant; and (iv) damages attributable to that breach. *Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, 438 F. App'x 20, 21-22 (2d Cir. 2011) (summary order).

### B. Analysis

Coachways argues that the breach of contract claim should be dismissed because (1) Plaintiffs failed to allege what provision of the contract Coachways breached and (2) the contract and documentary evidence purportedly show that Coachways  provided a refund and did not breach the contract. *See* Br. at 14-15.  The Court addresses each argument in turn.

To state a claim for breach of contract, "the claimant must allege the specific provisions of the contract upon which the breach of contract claim is based." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009).  "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim," but "the complaint must at least set forth the terms of the agreement upon which liability is predicated by express reference." *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012) (citation omitted).  Here, Plaintiffs have alleged that Ben's contracted with Coachways for round-trip transportation from locations in New York, Westchester, and Connecticut to Washington, D.C. on November 14, 2023, AC ¶¶ 4-5, 23, 85; that they had paid $18,950 for five buses to transport them to the rally, AC ¶ 22; and that Coachways agreed to provide eighty buses total to class members, AC ¶ 24.  The Coachways/Ben's Agreement likewise states that the Individual Plaintiffs and other passengers would be

transported from New York to Washington, D.C., on November 14, 2023, by "5 Coach Bus[es]" and that the total price was $18,950.00, due on November 6, 2023. *See* Dkt. 35-4 ("Coachways/Ben's Agreement") at 1. Plaintiffs allege that Coachways breached the agreement by not providing the contracted-for transportation to Washington, D.C., and failing to refund the $18,950.00 that had been paid. AC ¶ 90. This satisfactorily alleges the terms of the contract Coachways is alleged to have breached. *See, e.g.*, *Lojewski v. Grp. Solar USA, LLC*, 708 F. Supp. 3d 342, 367-68 (S.D.N.Y. 2023) (plaintiff adequately alleged "enough to put [defendant] on notice of the contractual promise . . . that was breached" where he alleged that defendant "agreed to install functional solar panels" and failed to do so).

Coachways contends that the documentary evidence it attached to its Rule 12(c) motion, including the Coachways/Ben's Agreement, precludes the breach of contract claim because it demonstrates that Coachways did not breach the contract. Br. at 14. Coachways argues that the Coachways/Ben's Agreement reserves Coachways' right to cancel a reservation if a vehicle is unavailable, states that Coachways cannot be held liable for acts over which Coachways has no control, and permits last-minute cancellations. *Id.* at 14-15. Coachways also contends that it did not breach the contract because it "fully refunded the moneys paid for the percentage of services not rendered," and directs the Court to a document purportedly demonstrating that Coachways refunded Plaintiffs. *See id.* at 15 (citing Dkt. 35-11). The Court is not persuaded.

The parties dispute the reason for the cancellations and whether Coachways had control over the acts resulting in cancellations and therefore the Court cannot hold as a matter of law at this juncture that Coachways was entitled to cancel the reservations. In addition, the Amended Complaint clearly alleges that Plaintiffs paid for the buses that did not arrive and were not refunded for the monies that they paid. AC ¶ 90. Coachways contends that it has

properly refunded Plaintiffs, and cites a document that purportedly reflects its refund. *See* Br. at 16 (citing Dkt. 35-11). But the Court may not properly take judicial notice of this document and will not consider it in resolving the motion for judgment on the pleadings. *See supra* note 1. Instead, the facts alleged in the AC — which are all that is properly before the Court, and which the Court must assume are true — reflect that Coachways has not refunded the $18,950 that Plaintiffs paid to it under the terms of the Coachways/Ben's Agreement. *See, e.g.*, AC ¶ 23. Even if the Court were to consider the document to which Coachways points, it does not provide any details about the parties to the refund and, in any event, only states that $3,000 was refunded. Dkt. 35-11 at 2.

Because the Court finds that Plaintiffs have adequately stated a claim for breach of contract, the Court denies the motion to dismiss Count VII.

## V.    Negligent Supervision Claim Against Coachways (Count VIII)

Plaintiffs next bring a negligent hiring and supervision claim against Coachways based on its alleged duty to monitor and supervise its employees to determine whether they were engaging in discriminatory acts and negligence by failing to train, investigate, monitor, and supervise its employees. AC ¶¶ 92-96.

### A.    Legal Standard

The elements of a negligence claim under New York law are "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Generation Next Fashions Ltd. v. JP Morgan Chase Bank, N.A.*, 698 F. Supp. 3d 663, 682 (S.D.N.Y. 2023) (quoting *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015)). "Whether a defendant owes a duty of care to a plaintiff 'is a question of law that the Court may properly determine on a motion to dismiss.'" *Id.* (quoting *Qube Films Ltd. v. Padell*, No. 13-cv-08405 (AJN), 2014 WL 3952931, at *7 (S.D.N.Y. Aug. 12, 2014)).

Where the claim is one for negligent supervision, a plaintiff must also allege that "(1) the employer had actual or constructive knowledge of the employee's propensity for the sort of behavior which caused the injured party's harm; (2) the employer knew or should have known that it had the ability to control the employee and of the necessity and opportunity for exercising such control; and (3) the employee engaged in tortious conduct on the employer's premises." *Moore Charitable Found. v. PJT Partners, Inc.*, 217 N.E.3d 8, 14 (N.Y. 2023).

### B. Analysis

Coachways argues that the negligence claim should be dismissed because Plaintiffs have failed to plead the existence of a duty of care and because the evidence Coachways submitted with its Rule 12(c) motion demonstrates it did not have a duty because it lacked control over the drivers. Br. at 15-16. The Court finds that while a duty may have been at least pleaded, Plaintiffs have failed to provide any factual basis for their conclusory allegation that Coachways knew or should have known of the drivers' propensity for discriminatory behavior.

A duty may arise where there is a relationship between a defendant and the third party that "encompasses defendant's actual control of the third person's actions," or "between defendant and plaintiff that requires defendant to protect plaintiff from the conduct of others." *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1061 (N.Y. 2001). An employer-employee relationship, as alleged here, is one such relationship. *See D'Amico v. Christie*, 518 N.E.2d 896, 901-02 (N.Y. 1987) (duty to control the acts of a third person can arise from an employer-employee relationship).

Plaintiffs allege that Coachways employed the John Doe Defendants and that it had a duty to Plaintiffs to exercise reasonable care in supervising its employees. AC ¶¶ 93-94. While these allegations are limited, "the bar for alleging an employer-employee relationship is

not high" on a motion to dismiss. *Canosa v. Ziff*, No. 18-cv-04115 (PAE), 2019 WL 498865, at *15 (S.D.N.Y. Jan. 28, 2019); *see, e.g.*, *Haight v. NYU Langone Med. Ctr.*, No. 13-cv-04993 (LGS), 2014 WL 2933190, at *8-9 (S.D.N.Y. June 27, 2014) (finding negligent supervision claim adequately pleaded where complaint alleged that tortfeasor "was employed by [defendant]"). Coachways does not argue that the allegations in the AC are insufficient to plead an employer-employee relationship; rather, it denies that Coachways in fact employs any drivers at all and directs the Court to the declaration attached to its motion for proof. *See* Br. at 16 (citing Dkt. 35-2). The Court cannot consider this declaration in deciding the present motion for judgment on the pleadings because it extends beyond the pleadings. *See supra* note 1. "At this stage, the Court instead must proceed 'on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Carlyle Aviation Mgt. Ltd. v. Frontier Airlines, Inc.*, 711 F. Supp. 3d 225, 239 (2024) (quoting *Twombly*, 550 U.S. at 555). Therefore, Plaintiffs' allegations of an employer-employee relationship suffice to plausibly allege the existence of a duty.

However, Plaintiffs have failed to allege that Coachways had actual or constructive knowledge of the drivers' propensity for the sort of behavior that caused Plaintiffs' harm. Even though, unlike a Title VI claim, constructive knowledge suffices for a negligence claim, Plaintiffs' sole allegation in support of such knowledge is the DOT's statement of September 28, 2023, AC ¶ 26, which cannot be said to create even constructive knowledge of the risk that the Coachways' drivers would discriminate against passengers in bus travel based on religion or national origin, since it concerns the need to improve airline travel for persons in wheelchairs. *See supra* at 9. The absence of allegations in the AC concerning Coachways' actual or constructive knowledge of the drivers' tendency towards the discriminatory behavior alleged is "fatal" to Plaintiffs' negligent supervision claim and warrants dismissal for failure

to state a claim. *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (dismissing negligent supervision claim where, among other things, plaintiff failed to allege defendant's knowledge of tortfeasor's propensity for sexual assault).

Therefore, the Court dismisses Count VIII.

## VI.    Title VI, Section 1983, NYSHRL, and NYCHRL Claims Against John Doe Defendants and ABC Corporations (Counts I, II, IV, and V)

Plaintiffs also allege Title VI, Section 1983, NYSHRL, and NYCHRL claims against the John Doe Defendants and the ABC Corporations. AC ¶¶ 46-57, 63-76. Plaintiffs argue that even if the Court grants Coachways' motion, it should not dismiss the action in its entirety because the AC brings claims against the John Doe Defendants and ABC Corporations, whom Plaintiffs intend to name in a future amendment to the Amended Complaint. Opp. at 7-8. Coachways argues that the claims against the John Doe Defendants and the ABC Corporations should be dismissed because Plaintiffs have not exercised due diligence to identify or name the John Doe Defendants or the ABC Corporations, as required by N.Y. C.P.L.R. ("C.P.L.R.") 1024. Reply at 9-10.

The Court disagrees that C.P.L.R. 1024 requires dismissal of the John Doe Defendants or the ABC Corporations. C.P.L.R. 1024 provides that a plaintiff who is "unaware of the name or identity of a defendant" may "designat[e] so much of his or her name as is known" and must show that they "made timely and diligent efforts to ascertain the identity of an unknown defendant prior to the expiration of limitations" to permit the prior pleadings to be amended to cover that defendant. *Walker v. GlaxoSmithKline, LLC.*, 77 N.Y.S.3d 725, 727 (App. Div. 2018). C.P.L.R. 1024 is inapplicable at this juncture because the statute of limitations (or relating back to a prior complaint), is not at issue here, and there has been no

discovery in this action to permit Plaintiffs to diligently ascertain the identities of the unnamed defendants.

That being said, the claims against the ABC Corporations are dismissed for failure to state a claim for the same reasons that the claims against Coachways are deficient. The ABC Corporations are the owners and operators of the buses that failed to transport Plaintiffs to the rally on November 14, 2023. AC ¶ 20. Even if unnamed, the AC's allegations against the ABC Corporations are even more sparse than its allegations against Coachways, and share similar deficiencies. Just as with Coachways, the AC does not allege that the ABC Corporations knew that the Plaintiffs were Jewish or Israeli, nor does it include any nonspeculative allegations that would support a plausible claim of discriminatory intent or that Plaintiffs were treated less well because of their religion or national origin. Unlike with Coachways, the AC does not even purport to allege that the ABC Corporations received federal funding or acted under color of state law. Therefore, the deficiencies in pleading identified with regard to the Title VI, Section 1983, NYSHRL, and NYCHRL claims against Coachways apply with equal, if not greater, force to the claims against the unnamed and unserved ABC Corporations.

Turning to the John Doe Defendants, the unnamed drivers and employees of Coachways, AC ¶ 19, the Court will dismiss the Title VI and Section 1983 claims. The Title VI claim must be dismissed because "Title VI does not provide for individual liability." *Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018) (collecting cases). "The proper defendant in a Title VI action 'is the entity that receives federal financial assistance, not an individual.'" *Milione v. City Univ. of N.Y.*, 950 F. Supp. 2d 704, 705 (S.D.N.Y. 2013) (quoting *Kelly v. Rice*, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005)), *aff'd* 567 F. App'x 38 (2d Cir. 2014 (summary order). Accordingly, insofar as Count I asserts Title VI claims against

the John Doe Defendants, those claims are dismissed.  The Court will also dismiss the Section 1983 claims.  The AC makes no allegation suggesting that the John Doe Defendants, who are private actors, acted under color of state law under any of the three tests used in the Second Circuit.  *See Sykes v. Bank of Am.*, 723 F.3d 399, 405-07 (2d Cir. 2013).  Because state action is a prerequisite for liability under Section 1983, the Court dismisses Count II insofar as it asserts Section 1983 claims against the John Doe Defendants.

However, the Court will not dismiss the NYSHRL and NYCHRL against the John Doe Defendants at this time.  Unlike Title VI, the NYSHRL and NYCHRL provide for individual liability for employees of places of public accommodation, *see* N.Y. Exec. Law § 296(a); N.Y.C. Admin. Code § 8.107(4).  The NYCHRL and the NYSHRL require allegations that the defendant's actions were "purposefully discriminatory and . . . motivated [by plaintiff's membership in a protected class]," *Ludwig's Drug Store, Inc. v. Forest City Enter.*, No. 13-cv-06045, 2016 WL 915102, at *19 (E.D.N.Y. Mar. 4, 2016) (quoting *Perez Rivera v. Hertz Corp.*, 990 F. Supp. 234, 236-37 (S.D.N.Y. 1997)).  Plaintiffs allege that the John Doe Defendant drivers refused to transport Plaintiffs to the March for Israel Rally "on the basis that they would not transport Jewish individuals or Israeli nationals to said rally" and that they "communicated by text messages and/or other means so as to coordinate their efforts."  AC ¶ 3.  This adequately alleges that the John Doe Defendants treated Plaintiffs differently because of their protected characteristics, at least until they appear and can raise any defenses they may have.

Therefore, the Court dismisses Counts I, II, IV, and V with respect to the ABC Corporations, and Counts I and II with respect to the John Doe Defendants.  *See Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 615 n.25 (S.D.N.Y. 2022) (dismissing complaint against served and unserved defendants where the "identified deficiencies in the [complaint] equally

appl[ied] to the claims against those defendants . . . who ha[d] not been served"), *aff'd sub nom. Tseng v. De Vries*, No. 22-2787, 2023 WL 8073087 (2d Cir. Nov. 21, 2023) (summary order).

## CONCLUSION

For the foregoing reasons, Coachways' motion for judgment on the pleadings, Dkt. 34, is GRANTED IN PART and DENIED IN PART. Plaintiffs consent to the dismissal of Count III and Count VI against all Defendants. The Court dismisses Counts I, II, III, VI, and VIII in their entirety. Counts IV and V are dismissed as against Coachways and the ABC Corporations. The Court denies the motion insofar as it seeks to dismiss Counts IV and V against the John Doe Defendants, and to dismiss Count VII against Coachways.

The stay of discovery is LIFTED and the parties shall submit a revised Case Management Plan by **January 31, 2025**. This case will proceed against Coachways solely on a breach of contract theory and against the individual John Doe Defendants under the NYSHRL and NYCHRL.

The Clerk of Court is directed to terminate the motion at Dkt. 34.

Dated: January 21, 2025
    New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge